**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> VICTOR LIPUKHIN <br> (a/k/a Victor Lipoukhine), <br> [DOB: 5/10/1963] <br><br> Defendant. | Case No. _____ <br><br> **COUNT ONE:** <br> **26 U.S.C. § 7212(a)** <br> **(Attempts to Interfere with Administration of Internal Revenue Laws)** <br> NMT 3 Years Imprisonment <br> NMT $250,000 Fine <br> NMT 3 Years Supervised Release <br> Class D Felony <br><br> **COUNTS TWO – FOUR:** <br> **26 U.S.C. § 7206(1)** <br> **(Making and Subscribing a False Tax Return)** <br> NMT 3 Years Imprisonment <br> NMT $250,000 Fine <br> NMT 3 Years Supervised Release <br> Class D Felony <br><br> $100 Mandatory Special Assessment Each Count |

# I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

## BACKGROUND

1. At all times relevant to this indictment, LIPUKHIN was a Russian national and a resident of the United States. On or about May 22, 2002, LIPUKHIN became a lawful permanent resident of the United States.

2. Beginning in or about 1996, and continuing into 2002, LIPUKHIN served as President of Severstal, Inc. (USA), a subsidiary (through a holding company) of AO Severstal, the largest steel producer in Russia. Severstal, Inc. (USA) maintained an office in Elgin, Illinois

and served as a sales marketing representative for AO Severstal in the United States. After leaving Severstal, Inc. (USA), from approximately 2003 through at least mid-2007, LIPUKHIN ran several domestic entities, including Charlestal, LLC and LV Management, LLC, which owned and rented out properties in the suburbs of Chicago.

3. Beginning at least in 2001, LIPUKHIN maintained a residence in St. Charles, Illinois, within the Northern District of Illinois. In or about mid-2007, LIPUKHIN left the United States for Russia to work at a hotel and resort being built in Sochi, near the site of the 2014 Winter Olympics and Paralympics.

## OBLIGATIONS OF UNITED STATES TAXPAYERS WITH RESPECT TO FOREIGN FINANCIAL ACCOUNTS

4. Citizens and permanent residents of the United States who have income in any one calendar year in excess of a threshold amount ("taxpayers") must file a U.S. Individual Income Tax Return (Form 1040) ("tax return") for that calendar year with the IRS. On such a tax return, taxpayers are required to report their income from any source, regardless of whether the source of their income is inside or outside the United States.

5. On Schedule B of a tax return, a taxpayer must indicate whether "at any time during [the relevant calendar year]" he/she had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the taxpayer answers that question in the affirmative, then he/she must indicate the name of the particular country in which the account is located.

6. Separate and apart from the obligation to file a tax return, taxpayers who have a financial interest in, or signature authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular calendar year are required to file with the Department of Treasury a Report of Foreign Bank and Financial Accounts,

2

FinCEN Form 114 (previously called a Form TD F 90-22.1) ("FBAR"). The FBAR for any calendar year is required to be filed on or before June 30 of the following calendar year. The FBAR requires the filer to identify the financial institution with which the financial account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year.

7. An "undeclared account" is a financial account controlled by, and for the benefit of, a taxpayer and maintained in a foreign country that has not been properly reported to the United States government on a tax return and an FBAR.

**OBLIGATIONS OF BUSINESSES REGARDING CASH TRANSACTIONS**

8. Each person engaged in a trade or business who, in the course of that trade or business, receives more than $10,000 in cash in one transaction, or in two or more related transactions, must file with the IRS a Form 8300 (Report of Cash Payments Over $10,000 Received in a Trade or Business). The IRS Form 8300 requires the filer to identify, among other things, the individual from whom the cash was received (including name, taxpayer identification number/Social Security number, address, date of birth, and occupation, profession, or business), the trade or business that received the cash, and a description of the transaction and method of payment. The trade or business is also required to verify the name and address of the individual paying cash by requesting and examining a means of identification, such as a driver's license, passport, or other official document.

**FOREIGN BANK ACCOUNTS AND ENTITIES**

9. UBS is a corporation organized under the laws of Switzerland. UBS, directly and through its subsidiaries, operates a global financial services business. Among other things, UBS provides banking, wealth management, and asset management services. In 2000, UBS

3

voluntarily entered into a Qualified Intermediary Agreement ("QIA") with the IRS that required UBS to report to the IRS income and other identifying information for its United States clients who held United States securities in a UBS account. The QIA also required UBS to withhold income taxes from United States clients who directed investment activities in foreign securities from the United States.

10. On or about March 14, 2002, LIPUKHIN and another individual with the initials I.L. opened an undeclared account, with an account number ending in 133, at UBS in Switzerland in the name of Old Orchard, a Bahamian nominee entity. The account was funded with approximately $47,000,000 from a previously maintained undeclared UBS account in the Bahamas. On bank account opening documents, LIPUKHIN is listed as an "equal" beneficial owner and signatory on the new Old Orchard account.

11. On or about February 11, 2003, LIPUKHIN and I.L. directed that all but approximately $5,250,000 of the assets in the Old Orchard UBS account be transferred to another account at UBS owned and controlled by I.L. At that time I.L. was removed as a signatory, leaving LIPUKHIN as the sole signatory on the Old Orchard UBS account. Thereafter, LIPUKHIN directed virtually all transactions in the account, typically through a Bahamaian national with the initials P.M., who served as the nominee "director" of Old Orchard. Between 2003 and 2006, the year-end account balance ranged from approximately $3,900,000 to $7,400,000, and included significant holdings in United States securities.

12. On or about July 29, 2002, LIPUKHIN opened a second undeclared account, with an account number ending in 179, at UBS in Switzerland in the name of Lone Star, a Bahamian nominee entity. The account was funded with approximately $200,000 from the UBS Old Orchard account. On bank account opening documents, LIPUKHIN is listed as the sole

4

beneficial owner and signatory on the Lone Star account. Although LIPUKHIN owned and controlled the Lone Star UBS account, Bahamian national P.M. served as the nominee "director" of Lone Star. The year-end account balance exceeded $190,000 from at least 2003 through 2006, and included significant holdings in United States securities.

## THE DEFENDANT'S FILING HISTORY

13. For tax years 1995 through 2002, LIPUKHIN filed tax returns with the IRS. For tax year 2002, LIPUKHIN reported total income on his tax return of $577,148, based primarily of Form W-2 wages from Severstal, Inc. (USA) totaling $607,193. LIPUKHIN paid over $180,000 in taxes in 2002. For tax year 2003, LIPUKHIN failed to file a tax return as required by law. For tax years 2004 through 2006, LIPUKHIN filed false tax returns without remittance which omitted significant income, including income earned through his undeclared UBS bank accounts, and failed to report the source of income.

## COUNT ONE
### (Attempts to Interfere with Administration of Internal Revenue Laws)

14. The factual allegations in paragraphs 1 through 13 are incorporated herein by reference.

15. Beginning on a date unknown to the Grand Jury, but no later than 2002, and continuing through at least 2007, in the Western District of Missouri and elsewhere, defendant VICTOR LIPUKHIN did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws of the United States by, among other things:

    a. Opening and maintaining an undeclared account at UBS in Switzerland in the name of Old Orchard;

    b. Opening and maintaining an undeclared account at UBS in Switzerland in the name of Lone Star;

5

c.  Using nominee foreign entities and individuals to conceal the true ownership and control over the UBS Old Orchard and Lone Star accounts;

d.  Utilizing fictitious mortgages through an entity called Dapaul Management, controlled by a Canadian attorney with the initials J.G., to conceal LIPUKHIN's purchase of real estate in the United States with funds from the undeclared UBS accounts, including the $900,000 purchase of a historic building at 18 N. 4th Street in St. Charles, Illinois, in the name of Charlestal, LLC;

e.  Transferring funds from his undeclared accounts at UBS to a Canadian bank account controlled by J.G., for ultimate transfer to a domestic bank account in the name of Charlestal, LLC, and controlled by LIPUKHIN, in order to conceal the source of the funds;

f.  Using funds in a domestic bank account in the name of Charlestal, LLC, and controlled by LIPUKHIN, to pay for personal expenses and to withdrawal cash for personal use;

g.  Attempting to prevent an automobile dealer from filing with the IRS a Form 8300 to report LIPUKHIN's payment of approximately $24,539 in cash to purchase a new 2003 Ford Mustang; and

h.  Filing false tax returns for tax years 2004 through 2006 with the IRS Center in Kansas City, Missouri, that failed to report significant income, including income earned through his undeclared UBS bank accounts, and failed to report the source of income.

All in violation of Title 26, United States Code, Section 7212(a).

## COUNTS TWO through FOUR
### (Making and Subscribing a False Tax Return)

16.  The factual allegations in paragraphs 1 through 13 are incorporated herein by reference.

6

17. On or about the following dates, within the Western District of Missouri and elsewhere, defendant VICTOR LIPUKHIN did willfully make and subscribe U.S. Individual Income Tax Returns, Forms 1040, for the tax years set forth below, which were verified by a written declaration that the income tax returns were made under penalties of perjury, and did file these income tax returns with the IRS, which returns he did not believe to be true and correct as to every material matter, in that, each tax return reported total income on Line 22 in the amounts set forth below, whereas LIPUKHIN then and there well knew and believed that he received income in addition to the total income reported.

| COUNT | TAX YEAR | TOTAL INCOME REPORTED | DATE FILED |
|---|---|---|---|
| 2 | 2004 | -$38,925 | April 15, 2005 |
| 3 | 2005 | -$60,611 | April 15, 2007 |
| 4 | 2006 | -$78,866 | April 15, 2007 |

All in violation of Title 26, United States Code, Section 7206(1).

                                            A TRUE BILL.

                                       ___/s/ Boris A. Stancic_____
                                       FOREPERSON OF THE GRAND JURY

_/s/ Timothy J. Stockwell_____
Timothy J. Stockwell
Department of Justice, Tax Division
Trial Attorney


Dated: ___3/20/14_____
      Kansas City, Missouri

7